IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAMELA TAYLOR,                          *

    Plaintiff,                          *

v.                                      *      Civil Action No. BPG-11-0032

MICHAEL J. ASTRUE,                      *
Commissioner of
Social Security,                        *

    Defendant.                          *

  *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Plaintiff, Pamela Taylor, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq. Currently pending are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 19). These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

I.   **Background**

Plaintiff filed for SSI on October 2, 2007, alleging an unspecified disability beginning January 1, 2003.[1]   (R. at 9.) The claim was denied initially and on reconsideration.   Id.   On February 22, 2010, Plaintiff, represented by an attorney, testified at a hearing before an administrative law judge ("ALJ"), Robert W. Young.   Id.   Also testifying was a qualified vocational expert ("VE"), Tony Melanson.   Id.   At the hearing, Plaintiff claimed that she was disabled on the bases of cataracts in both eyes, a heart condition, depression, and mild mental retardation.   (See R. at 9-17.)   On May 27, 2010, the ALJ determined that Plaintiff was not disabled under the relevant sections of the Social Security Act.   (R. at 18.)   On November 24, 2010, the Appeals Council denied review, making the ALJ's decision final and reviewable.   (R. at 1-3.)   Plaintiff timely sought judicial review.

II.   **Standard of Review**

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision.   Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).   Substantial evidence is that which "a reasoning mind would accept as sufficient to support a

---

[1] Plaintiff subsequently amended her alleged onset date to October 2, 2007. (R. at 9.)

particular conclusion." Whitley v. Hartford Life & Acc. Ins. Co., 262 Fed.Appx. 546, 551 (4th Cir. 2008)(quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)), overruled by implication on other grounds Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); accord Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

In determining whether a claimant is disabled, the Commissioner has promulgated regulations that set forth the following five-step analysis. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987).

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.

> (2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

## III. Discussion

The ALJ analyzed Plaintiff's claim pursuant to the requisite five-step sequential analysis.  At step one, the ALJ determined that Plaintiff is not currently engaged in substantial gainful activity.  (R. at 11.)  At step two, the ALJ concluded that Plaintiff has the following "severe" impairments: "cataracts, an affective disorder, and a heart condition."  Id. He concluded that Plaintiff's alleged retardation was not a medically determinable "severe" impairment.  Id.  At step three, the ALJ found that Plaintiff's limitations do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  (R. at 11-12.)  At step four, the ALJ concluded that Plaintiff retains the RFC to "perform a full range of work at all exertional levels, except

4

for a limited far acuity in vision of 20/50 or 20/60 in the right eye and 20/70 in the left eye," and that "[s]he is limited to performing unskilled work." (R. at 13.) Based on this RFC assessment, the ALJ concluded that Plaintiff is able to perform past relevant work. (R. at 17.) Accordingly, the ALJ concluded that Plaintiff is not disabled. (R. at 17.)

On appeal, Plaintiff makes the following arguments: (1) the ALJ improperly disregarded her full-scale IQ score of 66; (2) the ALJ erred in finding that she did not meet and/or equal Medical Listing 12.05(C); (3) the ALJ improperly rejected or gave limited weight to the opinions of her treating physicians; and, (4) the ALJ's conclusions as to Plaintiff's RFC and her ability to perform her past relevant work were unsupported by substantial evidence and were inconsistent with his other findings at earlier stages in the sequential evaluation. (ECF No. 15-1 at 14-28.) A discussion of these arguments follows.

## A. **The ALJ's Rejection of Plaintiff's Full-Scale IQ Score**

On January 17, 2010, Plaintiff underwent a psychological examination by Dr. Edward Ansel, a licensed psychologist employed by the Baltimore Office of Disability Adjudication and Review. (R. at 312; ECF No. 15-1 at 8.) Dr. Ansel concluded from the examination that Plaintiff had a full-scale IQ of 66, a verbal comprehension index (verbal IQ) of 68, and a perceptual reasoning index (performance IQ) of 75. (R. at 313.) He also

concluded that Plaintiff's grade equivalents were 2.8 for word reading, 2.4 for sentence comprehension, 2.1 for spelling, and 4.0 for math.  (R. at 314.)  Finally, based on these figures, Dr. Ansel concluded that Plaintiff had been mildly mentally retarded since her developmental period.  Id.

Plaintiff argues that her alleged retardation, as reflected in her full-scale IQ score reported by Dr. Ansel, constitutes a severe impairment and that the ALJ erred by failing to so find at step two in the sequential evaluation.  (ECF No. 15-1 at 14-15.)   As discussed below, the court concludes that the ALJ's findings are supported by substantial evidence.

At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment (or combination of impairments) that was "severe."  20 C.F.R. 416.920(c).  An impairment is "severe" if it significantly limits the claimant's ability to work.  See 20 C.F.R. § 404.1521(a).  An impairment is "not severe" when "medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  Enoch v. Astrue, Civil Action No. TMD 10-784M, 2011 WL 2712553, at *2 (D. Md. July 11, 2011) (citing 20 C.F.R. § 416.921; SSR 85-28, 96-3p, 96-4p.)  Here, the ALJ concluded that Plaintiff's alleged retardation met the definition of "not severe." (R. at 11.)  Specifically, the ALJ cited the lack of

any previous complaints of mental impairment in Plaintiff's medical history, the lack of any other objective medical evidence of such impairment, and Plaintiff's daily activities (e.g. housework, shopping, and reading) and prior work experience (as a housekeeper and a machine operator) as demonstrating that Plaintiff's intelligence did not significantly limit her ability to work. (R. at 11.) Although Plaintiff argues that the ALJ improperly disregarded the IQ score supplied by Dr. Ansel, the court notes that Dr. Ansel's opinion does not specifically identify any work-related limitations stemming from Plaintiff's alleged retardation. Indeed, despite Dr. Ansel's claim that Plaintiff (who is 58) has been retarded since her developmental period, he observes that Plaintiff had been employed as recently as 2004 doing "custodial work" and that she quit "because of her health problems." (R. at 312.) Based on these facts, the court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's alleged retardation is not a severe impairment. See Hancock v. Astrue, No. 11-1001, 2012 WL 19731 at *3-4 (4th Cir. January 5, 2012)(holding that an ALJ may reject an IQ score that is contradicted by other evidence, even if it is the only IQ score on record).

**B. The ALJ's Conclusion that Plaintiff's Mental Conditions Do Not Meet and/or Equal Any Listed Impairment**

Plaintiff next asserts that the ALJ should have found at step three of the evaluation that her alleged retardation met the criteria listed in Medical Listing 12.05(C) for an impairment based on a deficit in general intellectual functioning.[2]   That listing has three criteria: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period"; (2) "[a] valid, verbal, performance, or full scale IQ of 60 through 70"; and, (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   20 C.F.R. Pt. 404, Subpt. P, App, 1, 12.05(C).   The ALJ, however, found that Plaintiff did not meet any of these criteria.

First, as discussed in more detail below, the ALJ properly refused to credit the opinion of Dr. Ansel - that Plaintiff had been mentally retarded since her developmental period - because he found it to be inconsistent with other evidence in the record.   The ALJ also considered evidence that Plaintiff failed the first and second grade, but found that the evidence did not show mental retardation because Plaintiff's school record

_____

[2] Plaintiff also argues that the ALJ should have found that her depression met or equaled Listing 12.04(A) and 12.04(B) based on the opinion of her treating psychiatrist, Dr. Frine Gonzales.   As discussed below (pp. 12-13), however, the court finds that the ALJ's decision to give no weight to Dr. Gonzales' opinion was supported by substantial evidence.   His finding that Plaintiff's mental condition did not meet or equal Listings 12.04(A) or (B), therefore, was not in error.

indicated that her difficulties were the result of frequent absences from class.  (R. at 13.)  On appeal, Plaintiff cites to other evidence of deficits in intellectual and adaptive functioning, namely that she is functionally illiterate, that she has little work history, that she has never had a driver's license, and that she must rely on family or friends for "most of her personal needs."  (ECF No. 15-1 at 19.)  The ALJ did not address these issues at step three, but at other points in his opinion he made reference to statements from Plaintiff's own hearing testimony that clearly belie these assertions. Specifically, the ALJ noted that: (1) contrary to her claim of illiteracy, Plaintiff testified at the hearing that reading was one of her daily activities;[3] and (2) she shops for herself, cooks, washes dishes, and takes public transportation, all tending to show a level of functional independence that is inconsistent with her claim of retardation. (R. at 14.)

Second, as just explained, the ALJ properly rejected the only IQ score in evidence.  Finally, as further explained below, the ALJ found at step four that none of Plaintiff's physical or mental conditions imposed significant limitations on her ability to function at work.  (R. at 17.)  In view of these facts, the

---

[3] In fact, the transcript shows that Plaintiff testified that she read books or newspapers for an hour a day.  (R. at 46.)

ALJ's conclusion that Plaintiff's alleged retardation did not meet or equal Listing 12.05(C) was not in error.

## C. **The ALJ's Treatment of the Medical Opinions of Plaintiff's Treating Physicians**

Plaintiff's medical record contains the opinions of three of her treating physicians: Dr. Dubin, her cardiologist; Dr. Richardson, her primary care physician; and Dr. Gonzales, her psychiatrist. (R. at Ex. Nos. 12F, 13F, 16F-21F, 23F, 24F, 26F-28F, 30F.) The ALJ found the opinions to be largely inconsistent with the rest of the evidence on record and therefore rejected the opinions of Drs. Richardson and Gonzales, and gave only limited weight to the opinion of Dr. Dubin. (R. at 16-17.) Plaintiff argues that the ALJ was not only prohibited from rejecting the opinions in this manner, but was obligated to give them controlling weight. For the reasons discussed below, the court concludes that the ALJ did not err.

An ALJ ordinarily gives more weight to the opinions of treating physicians than to other sources. 20 C.F.R. 416.927(d)(2). Indeed, an ALJ should give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic substantial evidence." Id. If an ALJ finds, however, that a treating physician's opinion is internally inconsistent or inconsistent with other substantial evidence in the record, he

may accord it less weight. See id.; see also, Ward v. Chater, 924 F.Supp 53, 56 (W.D. Va. 1996).

### 1. Dr. Dubin

Dr. Dubin performed a physical residual functional capacity ("RFC") assessment of Plaintiff on April 14, 2010. (R. at 349-351.) In his opinion, Plaintiff has a heart condition that will allow her to perform only sedentary work in the future. Specifically, Plaintiff suffered a myocardial infarction in August of 2008, and Dr. Dubin believes that, as a result, Plaintiff can stand for only 2 out of 8 hours and cannot lift 20 pounds on a regular basis. (R. at 296-297, 328-329, 349-350.) The ALJ acknowledged Dr. Dubin's opinion, but found that his report was internally inconsistent. (R. at 17.) At one point in his opinion, the ALJ noted, Dr. Dubin opined that Plaintiff was unable to perform light exertional activity, yet elsewhere he wrote that Plaintiff's heart functioning was normal and that her symptoms and limitations would not interfere with her ability to perform simple job duties during an eight-hour day. (R. at 17.) Because of this inconsistency, the ALJ gave Dr. Dubin's opinion "limited weight." Id.

The court finds that the ALJ did not err in according Dr. Dubin's opinion only limited weight. The doctor's opinion appears to be based entirely on Plaintiff's subjective complaints of chest pain and not on any objective evidence Dr.

Dubin discovered during the examination.  The questionnaire that Dr. Dubin completed contained a question as to whether Plaintiff's description of her symptoms and limitations was credible.  (R. at 350.)  Dr. Dubin responded only that he "[didn't] know her that well." Id.  Dr. Dubin's opinion was not supported by any objective clinical evidence, and the ALJ correctly declined to give it the controlling weight that is reserved for opinions that are so supported.  See 20 C.F.R. 416.927(d)(2).

### 2.  Dr. Richardson

On January 15, 2010, Dr. Terri Richardson completed a medical assessment report for Plaintiff, which became part of her medical record in this case.  (R. at 315-17.)  In the report, Dr. Richardson opined that Plaintiff could not stand for six hours per day or lift up to 20 pounds, and that her pain, depression, and the side effects of her medications would substantially restrict her ability to maintain the concentration necessary to perform simple job tasks.  (R. at 317.)  The ALJ rejected Dr. Richardson's opinion on several grounds.  First, he noted that the opinion was not supported by any "objective evidence" and that, in fact, Dr. Richardson had written in her report that Plaintiff had no "overt symptoms."  (R. at 16.)  Second, he noted that Dr. Richardson opined that Plaintiff had had these conditions since January 23, 2003, several years

before Plaintiff's alleged onset date of October 2, 2007. (R. at 16, 141, 318.) Finally, the ALJ noted that Dr. Richardson's opinions that Plaintiff had a disabling heart condition and disabling depression were contradicted by the largely normal results of Plaintiff's heart and mental evaluations on file. (R. at 16.)

The court finds that the ALJ properly rejected Dr. Richardson's opinion because it was unaccompanied by any supporting clinical evidence and was contradicted by substantial evidence in the record.

### 3.  Dr. Gonzales

Dr. Frine Gonzales, Plaintiff's treating psychiatrist, submitted medical assessment reports opining that Plaintiff has had disabling mental limitations stemming from major depression since June 4, 2008. (R. at 294-95, 320-24, 326-27.) The ALJ rejected Dr. Gonzales' opinion because it was not supported by "the underlying treatment records." (R. at 16, citing R. at 294-95, 326-27.) The ALJ further noted that Plaintiff had only been seen for mental health treatment on three or four occasions, and that during her consultative examination with another doctor (Dr. Ansel) she did not cite depression as a basis for her disability. (R. at 16.) Finally, the ALJ noted that Dr. Gonzales' opinion did not support Plaintiff's alleged onset date. Id.

13

As with the other opinion evidence, Dr. Gonzales' opinion consisted largely of conclusory answers to form questions in assessment reports with little supporting clinical evidence or explanation.  Dr. Gonzales did submit her treatment notes (R. 338-48) but, to the extent they are legible, the notes appear mostly to reflect Plaintiff's own statements about her condition and do not contain any objective evidence of the severe limitations on work performance that Dr. Gonzales attributes to Plaintiff.  The court therefore finds that the ALJ did not err in rejecting Dr. Gonzales' opinion.

D. **The ALJ's Determination that Plaintiff Can Return to Her Past Relevant Work**

At step four in the sequential evaluation, the ALJ must assess the claimant's Residual Functional Capacity ("RFC").  RFC is a measure of a person's ability to perform physical and mental activities in a work setting on a "regular and continuing basis," – i.e., eight hours a day, five days a week – in spite of any impairments.  20 C.F.R. § 404.1545(a); Hines v. Barnhart, 453 F.3d 559,562 (4th Cir. 2006).  In making this assessment, the ALJ must consider "all relevant evidence of [the] claimant's impairments and any related symptoms (e.g., pain)."  Id.; see also, 20 C.F.R. § 404.1529(a).  Further, the ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

14

findings) and nonmedical evidence (e.g. daily activities, observations)," and must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *4, *7 (S.S.A.); Barton v. Astrue, 495 F.Supp.2d 504, 510 (D. Md. 2007).

Plaintiff contends that the ALJ's physical RFC assessment was deficient in a number of respects. First, Plaintiff asserts that the ALJ did not make a "function-by-function assessment as to how long [she] can sit, how long she can stand and how much she can lift and carry." (ECF No. 15-1 at 25.) This court, however, has previously held that while SSR 98-6p requires an ALJ to consider the evidence presented on a function-by-function basis, it "does not require [him] to produce such a detailed statement in writing." Davis v. Astrue, Civil No. JKS 09-2545, 2010 WL 5237850 (D. Md. Dec. 16, 2010). Rather, an RFC assessment is sufficient if it includes "a narrative discussion of [the] claimant's symptoms and medical source opinions." Thomas v. Comm'r, Social Sec., Civil No. SAG-10-1828, 2011 WL 6130605 at *4 (D. Md. Dec. 7, 2011); See also Coles v. Astrue, Civil No. JKS 08-321, 2009 WL 3380334 (D. Md. Oct. 16 2009) ("Once all of the relevant evidence has been considered, then the ALJ may express the RFC in terms of the exertional levels of work.") (citing SSR 96-8p at *3.) The court finds that the ALJ

met this standard by providing a full narrative of his consideration of the evidence on file, specifically taking note of all the evidence presented by Plaintiff with regard to her exertional limitations, and explaining why that evidence was not compelling.  See pp. 8-12, above;(R. at 13-17.)

Second, Plaintiff argues that the ALJ's conclusion that she has the RFC to perform a full range of work at all exertional levels is not supported by substantial evidence because it fails to account for her age, heart condition, and cataracts. Plaintiff points out that a "full range" includes Very Heavy Work, which consists of frequently lifting and carrying up to 100 pounds, and she argues that it is simply "outrageous" to suppose that a woman of her age – 58 years old – with cataracts and a heart condition could perform this kind of work on a regular basis.  (ECF No. 15-1 at 25-26.)  The court finds, however, that substantial evidence supports the ALJ's decision.

Plaintiff's argument is unpersuasive for two reasons.  In the first place, the argument misconstrues the meaning of RFC. SSR 96-8p expressly states that "[a]ge and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the individual's medically determinable impairment(s) and related symptoms) are not factors in assessing RFC in initial claims." SSR 96-8P, 1996 WL 374184 at *2.  Rather, the assessment must be based solely on the

claimant's "medically determinable impairments and related symptoms." Id. See also Cross v. Astrue, No. 08-CV-0862 (TJM), 2010 WL 2399379 at *13 (N.D.N.Y. May 24, 2010)(Plaintiff had RFC to perform work at all exertional levels because record did not show that "any medically determinable impairments limited her exertional abilities."). Thus, the ALJ's finding that Plaintiff has the RFC to perform a full range of work means simply that Plaintiff has failed to prove that her medically determinable impairments limit her ability to exert herself. See id.

The other reason Plaintiff's argument fails is that the ALJ's findings with respect to each of her medically determinable impairments were based on a fair assessment of the evidence. First, with respect to Plaintiff's cataracts, the ALJ noted that her vision acuity test results showed her best corrected vision to be 20/50 or 20/60 in her right eye and 20/60 or 20/70 in her left. (R. at 14.) He incorporated a specific visual acuity limitation reflecting these results into his RFC. (R. at 13.)

Second, with regard to Plaintiff's depression, the ALJ noted that the evidence revealed that Plaintiff had a history of drug and alcohol use, that she had been prescribed anti-depressant medication but refused to take it, that many of her mental evaluations were "unremarkable," that she had reported having "average" levels of self-esteem, energy, and motivation,

and that she was grieving the death of her son, suggesting that her depression could be situational. (R. at 14-15.) He concluded that this evidence "fail[ed] to show any disabling conditions and further show[ed] that the claimant has refused to take her prescribed medications."[4] (R. at 14.) Nevertheless, the ALJ found that Plaintiff's RFC was limited to unskilled work, which, as discussed below, is sufficient to accommodate mild-to-moderate limitations stemming from a mental impairment.

Finally, with regard to Plaintiff's heart condition, the ALJ observed that Plaintiff had suffered a myocardial infarction in August of 2008 but that she had responded well to stent replacement and that all of her tests revealed no heart abnormalities or physical limitations. (R. at 15-16.) The only evidence before the ALJ suggesting that Plaintiff's heart condition was disabling was the opinion of Dr. Dubin, which was based on Plaintiff's complaints of chest pain. As discussed above, the ALJ properly assigned Dr. Dubin's opinion little weight. In view of these facts, the court finds that the ALJ's RFC assessment is supported by substantial evidence.

Plaintiff's third argument is that the ALJ's RFC assessment was inconsistent with his finding at step two that Plaintiff's cataracts, heart condition, and depression were "severe"

---

[4] Social Security regulations expressly provide that a person will not be found to be disabled if they have unjustifiably refused to follow a prescribed treatment for their condition. 20 C.F.R. § 404.1530.

impairments.  (ECF NO. 15-1 at 26.)  Plaintiff points out that a
"severe" impairment is, by definition, one that "significantly
limit[s] your physical or mental ability to do basic work
activities."  See 20 C.F.R. § 416.921.  Thus, she argues, if the
ALJ finds a severe limitation at step two, simple logic would
require him to find at least some restrictions based on that
condition in assessing the claimant's RFC at step four.  The
findings that the ALJ must make at steps two and four, however,
are quite different.  Plaintiff's burden of showing a severe
impairment at step two is only a "de minimis screening device
used to dispose of groundless claims."  Webb v. Barnhart, 433
F.3d 683, 687 (9th Cir. 2005) (internal brackets and quotation
marks omitted).  An ALJ may only declare an impairment to be
"not severe" if the medical evidence on record clearly
establishes that the impairment is "a slight abnormality that
has no more than a minimal effect on an individual's ability to
work."  Id. (internal quotation marks and citation omitted.)
Furthermore, any doubt or ambiguity in the evidence at step two
should be resolved in the claimant's favor and the ALJ should
continue with the sequential evaluation.  See SSR 85-28, 1985 WL
56856, at *4.  At step four, on the other hand, the ALJ must
look to all the evidence on record and determine more precisely
how, if at all, the claimant's impairments limit her ability to
work.  It is possible, therefore, for an ALJ to find at step two

that a claimant's condition is severe - because the medical evidence does not conclusively prove otherwise - and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work.[5]   In view of these differing standards, the court finds no error in the ALJ's decisions at steps two and four.

Furthermore, even if the ALJ erred by failing to find any exertional limitations stemming from Plaintiff's heart condition and cataracts, the error was harmless because the ALJ based his ultimate disability determination on a finding that Plaintiff could return to light, unskilled work, which was supported by substantial evidence.   See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error in RFC determination is harmless if it does not affect his ultimate conclusion as to disability); Pratt v. Astrue, No. 2:08-cv-165, 2009 WL 2516981 at *12 (E.D. Tenn. Aug. 14 2009) (ALJ's erroneous determination that Plaintiff had RFC to perform full range of medium work was harmless error when ALJ ultimately concluded that Plaintiff could return to her past relevant work,

---

[5] Several courts have concluded, based on similar reasoning, that an ALJ is not obligated to find that a particular condition causes functional limitations at step four simply because he found the condition "severe" at step two. See, e.g., Tracy v. Astrue, No. 09-CV-953S, 2011 WL 3273146 at *8 (W.D.N.Y. July 29, 2011) ("… a finding that a claimant possesses a severe impairment or combination of impairments for the purpose of step two does not direct an ALJ to find a particular RFC for the purposes of steps four and five."); Irving v. Astrue, Civil Action No. 10-cv-01657-CMA, 2011 WL 2173780 at *4-*5 (D. Colo. June 1, 2011) (upholding ALJ's finding at Step 4 of no limitations from Plaintiff's migraines, despite finding that migraines were "severe" at Step 2).

which was light and sedentary, and Plaintiff adduced no evidence that she could not perform light and sedentary work).  At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform her prior work as a housekeeper, which is classified as light, unskilled work.  Light work involves lifting no more than 20 pounds at a time and frequent lifting or carrying of only 10 pounds, and can involve "a good deal" of walking and standing.  20 C.F.R. § 404.1567(b).  The only evidence that Plaintiff offers suggesting that she could not perform this type of work is the opinion of Dr. Dubin, to which, as already discussed above, the ALJ properly assigned little weight.  Thus, even if the ALJ should have found some exertional limitations stemming from Plaintiff's heart condition and cataracts, substantial evidence still supports the ALJ's ultimate conclusion that any such limitations were not so severe as to prevent Plaintiff from performing light, unskilled work.

The same reasoning applies to Plaintiff's argument that the ALJ erred by failing to make a more detailed evaluation of her mental RFC.  (ECF No. 15-1 at 27.)  As already discussed, the court finds that the ALJ gave careful consideration to all the evidence on record concerning Plaintiff's alleged affective disorder and found that it could not reasonably be expected to produce any disabling limitations.  (R. at 17.)  The ALJ concluded that Plaintiff's medical conditions, generally, could

not be expected to produce more than "mild-to-moderate functional limitations on her ability to perform basic work activities." Id. The ALJ adequately accommodated such restrictions in his RFC by limiting Plaintiff to unskilled work. See Melgarejo v. Astrue, Civil No. JKS 08-3140, 2009 WL 5030706 at *2 (D. Md. Dec. 15 2009) (limitation to unskilled work sufficient where Plaintiff's mental impairment produces only mild-to-moderate limitations). The only evidence Plaintiff offers suggesting that her mental impairments are severe enough to preclude her from performing even unskilled work are the opinions of her treating physicians, which the ALJ expressly rejected.

Finally, Plaintiff argues that the ALJ failed to make any specific factual findings regarding the physical and mental demands of her past relevant work as a housekeeper, and failed to obtain sufficient documentation to determine whether she could return to that work. The court, however, finds that the ALJ's findings were adequate. SSR 82-62, the authority on which Plaintiff relies in her argument, provides in relevant part:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>     1. A finding of fact as to the individual's RFC.
>     2. A finding of fact as to the physical and mental demands of the past job/occupation.

> 3. A finding of fact that the individual's RFC
> would permit a return to his or her past job
> or occupation.

SSR 82-62, 1982 WL 31386 (S.S.A.)   The ALJ's opinion contains

findings on each of these points.   First, as already discussed,

the ALJ found that Plaintiff has the RFC to perform a full range

of unskilled work at all exertional levels, with a specific

visual acuity limitation.   Second, the ALJ found, based on

Plaintiff's own testimony and that of the VE, that Plaintiff's

past relevant work as a housekeeper was "light" and "unskilled."

(R. at 17, 34-35, 52.)   Finally, the ALJ found that Plaintiff's

RFC enabled her to perform light and unskilled work and that she

would be able to perform her past relevant work "as actually and

generally performed." (R. at 17.)   These findings are sufficient

to meet the requirements of SSR 82-62, listed above.   See Brown

v. Astrue, Civil Action No. TMD 09-1358, 2011 WL 3047635 at *4

(D. Md. July 22 2011)(upholding similar findings).

    Plaintiff also argues that the ALJ was required to obtain

extensive documentation regarding the demands of her prior work,

including "detailed information about strength, endurance,

manipulative ability, mental demands and other job

requirements," and to consider a host of factors such as whether

returning to her past work would "produce anxiety and tension,

thereby exacerbating her severe heart condition" and "whether

[her] affective disorder would affect her ability to deal with

the public, supervisors, and co-workers . . . ."  (ECF No. 15-1 at 28.)   Plaintiff, however, cites no authority supporting her contention that an ALJ must obtain such documentation in every case or that he must make such factual findings in his opinion. Rather, Social Security Ruling 82-62 states that "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."  SSR 82-62 at *3.  See also Thomson v. Astrue, No. PWG-08-3252, 2011 WL 1298058 at *2 (D. Md. March 31 2011)(same); McGraw v. Astrue, Civil Action No. WGC-10-3465, 2011 WL 6755188 at *8 (D. Md. Dec. 23 2011)(same). Social Security Ruling 82-62 further states that the "detailed information" to which Plaintiff refers "must be obtained as appropriate." (emphasis added).   Here, the ALJ heard testimony from Plaintiff as well as the VE regarding the demands of Plaintiff's past relevant work.  (R. at 34-35, 52.)  Plaintiff offers no reason why the information that she, herself, provided was inadequate or why it would have been "appropriate" for the ALJ to conduct more extensive research.   The court therefore finds that the ALJ's determination at step four was supported by substantial evidence.  See Thomson v. Astrue, 2011 WL 1298058 at *2 (ALJ properly relied on testimony of Plaintiff and VE to determine demands of Plaintiffs past relevant work.)

## IV.  **Conclusion**

For the foregoing reasons, the court denies Plaintiff's Motion for Summary Judgment (ECF No. 15) and grants Defendant's Motion for Summary Judgment (ECF No. 19).  A separate order shall issue.

Date: _1/31/12_____                    _____/s/_____
                                           Beth P. Gesner
                                           United States Magistrate Judge